Torres v. First Transit. Good morning, Mr. Shurker. Good morning, Your Honor. May it please the Court, Elliot Shurker on behalf of First Transit. Your Honors, we submit the District Court failed to weigh or even to consider the two jurors' repeated admissions, that they knew that they had been sued and did not disclose that in jury selection. And the Court erroneously focused on the jurors' professed confusion over the definition of the term lawsuit, when the questionnaire itself defined lawsuit as suing or being sued. To be sure, the District Court made extensive findings of fact. My problem, Mr. Shurker, is we talk about lay jurors and they've been involved in what is dissimilar litigation, and the District Court makes a judgment call whether they were genuinely confused. And our review of that is for what? Well, it's absolutely, the Court defers to the District Court's findings of fact, and Your Honor, you took the words right out of my mouth. The District Court made extensive findings of fact, there's no denying that. But those findings are completely focused on the jurors' professed misunderstanding of the word lawsuit. And question 10 on the jury questionnaire was, quote, if you and or a close family member or friend has ever been a party to a lawsuit, i.e., sued someone or been sued by someone. So whatever the subjective belief that these individuals may have had going into jury selection about what a lawsuit is, and that's been resolved by the District Court, we're not seeking to overturn that finding. They knew on the form that they were being asked, quote, essentially, have you ever sued someone or been sued by someone? It's undisputed. If there's no clear error in the finding that they made honest mistakes. About what a lawsuit is. Yeah. Not about whether they'd been sued. They knew they'd been sued. They repeatedly said they knew they'd been sued. The complaints against them said, so-and-so credit card company, so-and-so bank, hereby sues YC or ES. ES said, I know what a plaintiff is, I know what a defendant is, I know they were trying to collect money from me, but I didn't think I was ever in a lawsuit. But YC says, I have been involved in some cases that I didn't believe were lawsuits. I thought lawsuits were cases where people were seeking compensation for injuries. The cases I've been involved with are collections cases. To me, those were not lawsuits. ES says, quote, I didn't know 100% what a lawsuit was. I didn't have a lawsuit on me. It seemed like it would be more criminal, something important. When I filled out that form, I just felt like I never was involved in a lawsuit. Why couldn't the district court credit those statements? The district court did credit those statements. I know. Why couldn't they? And we don't challenge that finding, Your Honor. We said the district court... If it credits that as honest, then it seems to me there's no intentional dishonesty and you lose. No? No, Your Honor. The district court answered the wrong question. This court remanded to the district court to make a determination about whether the jurors had been dishonest in responding to question number 10. They testified at the hearing that they knew they had been sued. The question was, have you been sued? Their testimony was unequivocal that they knew they'd been sued. YC said at page 30 and 41-42 of the transcript, she'd been sued over five times. And ES testified that he knew the purpose of the actions was to collect money. But weren't those statements made after they had been informed that those types of actions, that suing was one of those types of actions? So factually, they had been sued, right? Correct. Many times. But do we have any evidence that they understood that at the time that they filled out their juror questionnaire as opposed to at this time for later testimony? These jurors were very... That's a very good question, Your Honor, because these jurors were very careful in their almost identical responses. They knew they'd been sued, but they didn't believe it was a lawsuit. That's exactly what YC said. I knew I'd been sued, I just didn't believe it was a quote-unquote lawsuit. So the district court simply answered the wrong question. There is no evidence in this record, in this seven-hour hearing that the other side touts, that the jurors who fully understood that they had been sued misunderstood that they were being asked if they'd been sued. Neither of the jurors testified that I looked at that questionnaire and said, oh, gosh, I don't even know if I'm... I don't understand this question about whether I've been sued. It was as clear as day, and their recollection about whether they'd been sued was as clear as day. Torres 1 states, in no uncertain terms, Your Honor, the question to be resolved is, quote, whether the juror made dishonest statements. We submit they undisputedly did. They were asked if they'd been sued, and they didn't answer or said no. This court can accept the finding, and should accept the finding. Our precedents require us... Didn't our precedents require the district court to ask whether the juror was aware of the fact that his answers were false? That is, whether it was intentionally dishonest. And we have a finding of fact that it was not intentionally false. Your Honor, I understand the question, but I think it's extremely important to look at the question that the district court answered. The district court never found that these jurors did not know that they had been sued, repeatedly been sued, served with documents that said, you are being sued. The question isn't one of objective truth. It's a subject of dishonesty. And I understood this the way I think the district court did, which is, did these jurors, were these jurors intentionally giving false answers? And it found they were not. As to whether they'd been involved in a lawsuit, Your Honor. That's all the district court found. I don't understand, frankly, why the district court chose to address it in that fashion. What these jurors said was, until the court appointed a lawyer for us, we never knew what a lawsuit was. Take that testimony at face value. The question was defined on the questionnaire. And there's no finding by the district court that they, one, didn't know they'd been sued, or two, didn't understand what it was to be sued. And it's easy to infer, it should be inferred, from those undisputed facts, that the jurors were concealing their litigation history. And that's the definition of juror dishonesty. I mean, based on the district judge's apparent distaste for this inquiry, which I'm taking away from the waiver provision, I don't, I don't exactly see that district court is likely to try to figure out a way to make sure that it saw these jurors as honest rather than dishonest. I mean, it seems that it's evaluating pretty straightforwardly whether these jurors believed that they were lying at the time. Again, Your Honor, at the risk of repeating myself, you can read this order from cover to cover, and the district court makes no finding about whether the actual question asked on the jury questionnaire was misunderstood by the jurors. The court found the jurors didn't understand what a lawsuit is before they went into the jury selection. That's it. That, that, distill everything that's said in that order down to one sentence, and that's all the order says. I asked the jurors, why did you say, um, you'd never been sued? The jurors were asked, did you know you'd been sued? And they said yes. Yeah. Why'd you fill out, and, and why'd you answer it this way? And they said, well, I didn't think that I'd ever been involved in a lawsuit. No, they said I, I answered this way because I didn't think I'd ever been involved in a lawsuit. Right, right. I answered it this way because, which goes to the ultimate inquiry for the court, which is whether they were being intentionally dishonest. Your Honor, I've, I've, I've stood in this, this courtroom many times, and I understand the import of the words I'm about to say, because I know we're not in a fact finding, in a fact finding, uh, world here. But when a juror admits, yes, I knew I had been sued, and the juror answers the question, have you ever been sued, and says no. I think it's fair to say that's entirely disingenuous, on the face of the record. It's one thing to say, credit it for whatever it's worth, I never understood what a lawsuit was, even though I've been sued many times, even though in E.S.'s case, he filed a response to a summary judgment motion, and appeared in court, and defended himself in, in one of these lawsuits, except that at face value. There's no other conclusion that can be drawn from the record, except that they lied when they said they knew they hadn't been sued. And it does no violence to the district court's, to the district court's findings to say that. As to the second question, the district court marched into the jury bias inquiry with a presumption that the jurors were honest. And, and, as this court, we recognized again in TOR as one, decades of its precedent, that the, the best evidence of juror, of juror bias is dishonesty. So if you proceed to analyze bias on a presumption that a dishonest juror has been honest, the, the inquiry, the inquiry is hopelessly skewed from the outset. I'll rely on, on my brief for the second point, and. Your, your position, Mr. Shurker, is that because the jurors said, I knew I'd been sued, then that was the end of the inquiry. Then they intentionally, then it necessarily, the district court has to necessarily infer that they were intentionally dishonest. I'm going to say it as plainly as I can, there's no other inference that can be drawn. The jurors, if the jurors had said, I was confused about what being sued was, but these jurors were not as confused in the slightest. You can read their testimony. They knew exactly what happened in the multiple cases against them. They were served with. There's no think back findings of intent work that way. I mean, then why would you, then why would you write that you hadn't? Well, I was confused. I had been involved in collection lawsuits. I thought a lawsuit was, was something like a car accident. You know, I wasn't being intentionally misleading. I just misunderstood. I misunderstood. You can't credit that and say, oh, well, in fact, even though you understood that you had been sued, you weren't intentionally dishonest. A fact finder can't do that. Well, the question is, have you ever been sued? And that was the question, because it was defined. Your Honor, if the question was, have you ever been in a lawsuit? The ultimate question for the court is, was the juror intentionally dishonest? Correct. Now, if the question had been, were you ever involved in a lawsuit, I'd have nothing to say. If they, if the court credited this testimony, I'd have, I'd have absolutely nothing to say. But that wasn't the question. The only way to read the question was, have you ever been sued? They knew they'd been sued, and they said no. Thank you. Thank you, Mr. Shirk. We're going to hear from Mr. Gowdy. Good morning, may it please the court, Brian Gowdy and Mark Chandler for the Tauruses. Sued and lawsuit, I think they have the same root. One's a verb, the other's a noun. These misconceptions by these two jurors is very common. I would just point you as just one example. First of all, the district judge did make findings that both these jurors were on. As I understand it, Mr. Shirk has got a very elegant, logical progression. Both jurors admitted that they knew they had been sued, and they answered the question on the juror questionnaire, have you been sued? No. Therefore, end of inquiry, they had to know that they'd given false answers. I think that mischaracterizes their testimony. At the time they testified, they had been appointed counsel. They had been educated, as we lawyers are, what a lawsuit is. There was a lot of confusion in the questioning that their counsel kept objecting to during the entire seven-hour hearing about how the defense lawyers kept trying to use these words that would put them . . . what now Mr. Shirk is doing. I think the district judge saw right through it. She expressly found that both of them were being honest at the time based on what their understandings were of what a lawsuit was. I wanted to point out, we cited this case. It's Tricam. It's from the state court. We're not citing it for the purpose of law. This is a common problem that I'll just tell your Honor, I see when I go to Vore Dyer, which I do a lot, all the time. Maybe it doesn't come up in an 11th Circuit opinion, but in this third district court of appeal case, the questions were, have any of you ever sued anyone else? Have you ever sued someone else? There was a juror who failed to disclose a divorce, three foreclosures, and two collections actions. The court noted that all the jurors on the veneer gave responses related to personal injury suits. I would note the jurors 20, 24, and 28 all revealed some type of non-personal injury suit in their questionnaires. Defense counsel at the time of Vore Dyer did not ask those jurors a single question about that, those suits unrelated to personal injury. We haven't heard a lot on the waiver argument. I don't think you need to get there. I think the district judge understood what was going on here, that this has been created out of whole cloth after the fact. I would just note, I do just want to note, because Mr. Shurker brought up the Williams v. Taylor case on the waiver issue. That's of course a 2000 Supreme Court habeas case, where the Supreme Court said, we should be surprised if a district court familiar with the standards of trial practice were to hold that in all cases, in all cases, diligent counsel must check public records containing personal information pertaining to every juror. The whole forfeiture thing that the district court engaged in . . . You don't want to hear about it. I think it was totally inappropriate. If there was a forfeiture, that's something that should have been raised by you in the first appeal. I agree. It's not something for the district judge on remand to then to raise and litigate and adjudicate. I agree. We made that our last argument in our brief. There was something that came up . . . To me, the real question is what we were talking about with Mr. Shurker. It's not just a did you know you had been sued question. It's a question of ultimate dishonest intent on the part of the jurors, which is a more complicated inquiry than it seems to me is logical progression. I think that's . . . The district court can credit juror testimony and say, I don't think they were being intentionally dishonest. I agree. I agree that that's all you need to get to. You're here on clear air. You had credibility findings. The judge gave the defense seven hours of hearing time, extensive questioning of these two jurors. They may well have known they had been sued. They said they knew they had been sued, but nevertheless, when they gave that answer that they hadn't been sued, it was based on an honest mistake because they had a misunderstanding of what the question was about. I think that's all your opinion needs to say. As far as the second prong, actual bias, the defense's entire argument sits on the dishonesty prong. They haven't shown any other evidence of actual bias other than the assumption they make that these jurors were dishonest. That's really the end of the inquiry, I think, on the first issue. Just so I understand what happened at the hearing, were the jurors asked why, if they knew they'd been sued, they answered the question no? I'm sorry. Were they asked why, sorry, maybe you can't hear me, were they asked why, if they knew they'd been sued, they answered the question no? There were a lot of questions. It was seven hours. At times, they were asked, do you know you had been sued? I would say the context of the question was not clear and that it wasn't clear whether they were, the questioner wasn't clear about whether they were asking at the time of Vordaer or now. The jurors knew now, by now I mean at the time of the hearing in 2021, the jurors knew then because they had counsel, they had learned what a lawsuit was. But they were very adamant that their answers were honest, that their answers in their view were that what they had been involved with at that time in 2018 when they gave the answers, they didn't view those as being sued or lawsuits. I mean, this making a distinction between lawsuit and being sued, I'm sorry, that's just making a distinction between the noun and the verb. The jurors aren't, these jurors weren't picking up on what, Mr. Scherker is a very capable appellate lawyer, but these were ordinary jurors. And I pointed you to the Tricam case where the same mistake came up. Remind me please, I know we've got this, but remind me right now what the precise question that they answered in Vordaer was. Yes, I got it right here. If you and or a close family member or friend has ever been a party to a lawsuit, parentheses, i.e., I don't know if a lot of jurors know what that means, I get it mixed up, sued someone or been sued by someone, please describe the circumstances. And one thing you won't see in there but you'll see in Mr. Scherker's reply brief is the word for money. The reply brief keeps saying they knew they were sued for money. That word, the words for money aren't in the question. But all of that, sued or be sued, is in the parenthetical after the use of the word lawsuit. Exactly. And a juror could stop at reading lawsuit because they don't understand what a lawsuit is, think they haven't been a party to a lawsuit and say no and move on to the next question. How many questions were there on the questionnaire? There were twelve. And these are given to the juror, you show up for jury selection, it's a form. There was one juror who put question mark on number ten. Really? So and I have that here if you want to know which juror that was. But anyway. We can look at it. I'm sorry? We'll look at it. It's in the sealed filings and I believe it was juror, it was either 20, 24, 28 or 14, one of those. But it's not the clearest question. I think even that was commented upon at the first oral argument. If you go back and listen to that, and it's something that can be confused. I don't think the parenthetical helps much, i.e., been sued or having been sued. So what if an offense, if a defense attorney wanted to find out what it appears that the opposing side was trying to find out here? What question do you think they could ask that jurors would understand? I've seen when attorneys are concerned about this, they get very specific and vordire. Because attorneys who deal with individuals and not corporate clients understand people don't get this terminology. And they'll say things like, have you been involved in anything? Like have you had a credit card debt? Have you had a bankruptcy? Have you had a divorce? A foreclosure. I mean, go ask any, just go ask somebody who's not a lawyer, is a divorce a lawsuit? Or is an adoption a lawsuit, right? Yeah. I mean, this is, I mean, I did a little informal survey, I'll just say, before this oral argument, and I think a lot of I'm sure that's in the record. I'm not suggesting it's in the record, but I think we're here a little bit on common sense and finding credibility. And even if three of you were to disagree with that, I don't see how you can reverse her on that ground. And credibility funding is the sort of thing that's hard to evaluate when we didn't see her. Right. Well, that's why I pointed you to the TRICAM case, because that's just one example where this comes up frequently. But I think, Judge Grant, to answer your question, if someone's really concerned about that, for example, there was one juror who did disclose a real estate, and there were no questions asked about that, but you would ask very specific questions, because most people don't understand that all these things that we understand as lawyers or lawsuits are lawsuits. I know Mr. . . . do you have any more questions on the juror? It's the only thing we've talked about this morning, Mr. Gowdy. I'm sorry? I said it's the only thing we've talked about this morning. Right. Well, you've had . . . this is your fourth case. I think you've covered a lot. But I wanted to . . . I don't have to get on to the second issue. Mr. Sherker didn't say anything. So . . . Right. He didn't. If you don't say anything about it, then he has nothing to rebut. So then I won't say anything. Thank you for your time. Thank you. Thank you. Mr. Sherker, you've saved three minutes. Just so that we're entirely clear about what happened at Waudeer, I refer the Court to Record 124, pages 6-7. When the judge announced at the commencement of Waudeer, you certainly have the benefit of the completed questionnaires, so that certainly should obviate the need for many of the background questions, and therefore 15 minutes aside is sufficient for Waudeer. It never came up. We never had the opportunity to do exactly the kind of questioning, Chief Judge Pryor, that you suggested, because that's the purpose of the jury questionnaires. And that's why they're done, and that's why they're supposed to be taken as honest and complete answers, as opposed to an opening the door for more questioning. The Third District's Court of Appeals decision . . . It was not when it came out, Mr. Sherker, on your adversary's presentation, is that that question first uses the word lawsuit, and then it has that parenthetical. So their understanding of the meaning of lawsuit is actually critical, isn't it? Your Honor, we could speculate that they read the word lawsuit and stopped, but they didn't say that. No, I understand. That's not the question. You have to assume that they at least read that word, don't you? Because you're also inferring that they read everything after it. That's correct. Okay. So they could have been genuinely confused by the question if they didn't understand what a lawsuit was. But not by the definition, is my point. Not by the definition. And in terms of what the trial court found, the district court found, I'd refer the court to page 39 of the order. One thing to say, I knew I had been sued, but it's another thing to say, I knew at the time that I had been sued within the meaning of that. I absolutely buy that, Your Honor, but that is not what they said. Neither of them ever said that I didn't understand when I received the complaint and was served . . . I think a fair reading of their testimony is that they knew at the time they answered the question that they'd been sued and just didn't think it was a lawsuit, to quote E.S. Right. So why, if that's the case, then why doesn't that decide the issue in favor of your opponent? Because the objective truth is that they had been sued. The objective truth is that they knew they'd been sued. And the objective truth is they were asked if they'd been sued. It's not a question of objective truth. It's a question. The district court had to answer a question of subjective intent. Correct. But we start with the objective truth. And what the district court found . . . Obviously, we wouldn't have had a remand for an evidentiary hearing if there wasn't a question about the objective truth. But that's not the end of the inquiry. That's the problem. Your Honor, I understand. But take a look at the judge's order. I see my time is up. Take a look at the judge's order at page 39, particularly the last paragraph in the discussion about E.S., where the court said, E.S. consistently testified that his prior . . . he did not believe his prior cases were lawsuits because they all involved suits of money that he owed and ultimately paid. That was the juror's understanding. And that's fine as to what a lawsuit is. But he never said he didn't know he'd been sued. And he never said that he didn't understand the question. Thank you, Mr. Shirk. Thank you, Your Honors. We are in recess until tomorrow.